UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

        Plaintiff,

v.                                                                Case No. 22-CV-585

ROBERT RYMARKIEWICZ,

        Defendant.

## DECISION AND ORDER

Plaintiff Timothy Durley, who is representing himself and currently confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Durley was allowed to proceed on a claim against defendant Robert Rymarkiewicz pursuant to the Fourteenth Amendment's due process clause for allegedly failing to review Durley's "three-officer escort" restriction every 30 days. The parties filed cross-motions for summary judgment, which are fully briefed and ready for a decision. (ECF Nos. 50, 58.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 17.)

## FACTS

At all relevant times relevant Durley was incarcerated at Waupun, where Rymarkiewicz was employed as a Captain. (ECF No. 52, ¶ 1.) On September 8, 2021, Durley was housed in the Restricted Housing Unit (RHU) and was placed on a "three-officer escort" restriction, which requires three officers to be present during an escort

of a prisoner. (*Id.*, ¶¶ 25-26.) The restriction is imposed "for the safety of the officers, institution staff, and the inmate." (*Id.*, ¶ 26.) Durley's restriction was placed because he "was being assaultive/threatening toward staff." (*Id.*¸¶ 27.) The parties dispute whether the Waupun Security Director or the RHU Supervisor had final approval for placement of the restriction. (*Id.*; ECF No. 73, ¶ 9.) As of January 2021, Rymarkiewicz was the RHU Supervisor; before that, non-defendant Captain Tritt (no first name in the record) was the RHU Supervisor. (ECF No. 73, ¶¶ 9-10.)

Durley's restriction was noted as being "permanent," which means it did not automatically expire after a certain time period. (ECF No. 52, ¶¶ 28-29.) Instead, the restriction was periodically reviewed by the RHU Review Team. (*Id.*, ¶¶ 10, 29.) The Review Team "is a multi-disciplinary group of individuals consisting of a Captain or Lieutenant, a Sergeant or Correctional Officer, a Social Worker, and staff from the Health Services Unit (HSU) and Psychological Services Unit (PSU)." (*Id.*, ¶ 10.) The Review Team reviewed each prisoner's restriction and made a recommendation to the Security Director, who made the final decision on whether to lift the restriction. (*Id.*, ¶ 11.) Durley disputes this, asserting that the RHU Supervisor (specifically, Rymarkiewicz) made the final decision as to whether the restriction should be lifted. (ECF No. 73, ¶ 16.)

Between February 26, 2022, and July 17, 2022, Waupun did not have a Security Director, so the Review Team "would collectively decide whether the restriction/precaution would continue." (ECF No. 52, ¶ 12.) Also, during the time Durley had the three-officer escort restriction in place, Waupun experienced staffing

2

issues, so the Review Team meetings occasionally had to be postponed. (*Id.*, ¶ 16.) Durley asserts that, as a result, his placement was not reviewed every 30 days as required by the Division of Adult Institutions (DAI) policy. (ECF No. 73, ¶ 7.) However, Durley does not state how often and how long the review of his restriction was delayed. He also does not describe the impact the delay had upon him other than to say that he remained under the three-officer escort restriction.

Durley asserts that, as a result of the three-officer escort restriction, he missed or was turned away from several HSU appointments. (ECF No. 73, ¶¶ 20-24.) He claims he was poisoned in March 2022 but, because of the escort restriction, he could not go to HSU during the third shift (presumably because there were not three available escorts). (*Id.*, ¶ 20.) Durley does not state whether he was injured as a result of this delay. In May 2022, an HSU nurse refused to assess Durley's asthma because he needed a three-officer escort and she would not do an assessment without those officers present. (*Id.*, ¶ 21.) Again, Durley does not say whether his condition worsened as a result of the delay. Durley did write several inmate complaints about the lack of health services due to his three-officer escort restriction and at least some of them were affirmed by the institution complaint examiner, resulting in corrective action being taken. (*Id.*, ¶¶ 22-23.)

It is not clear from the record how often Durley's three-officer escort restriction was reviewed. On November 28, 2022, the three-officer escort restriction was "re-entered by the Security Director as a 'two officer and a supervisor present' escort" because Durley caused a cell extraction to occur. (ECF No. 52, ¶ 32.; ECF No. 73, ¶

3

Case 2:22-cv-00585-WED    Filed 08/19/24    Page 3 of 8    Document 74

14.) The record is not clear how this new restriction differed from the three-officer escort restriction. On July 7, 2023, Durley's restriction was modified to a "two-officer escort" restriction. (ECF No. 52, ¶ 33.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on

4

the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Durley claims his due process rights were violated because Rymarkiewicz did not ensure that his restriction status was reviewed every 30 days.

A prisoner's due process protections are triggered only if the prisoner had a protected liberty interest at stake. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Seventh Circuit Court of Appeals has "repeatedly determined that even extremely harsh prison conditions may not be so 'atypical' as to create the liberty interest the [United States Supreme Court] contemplated." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Longer terms in segregation, without evidence of other extreme conditions, do not rise to the level of a constitutional violation. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Placement in segregation combined with the lack of all opportunity to exit a cell for exercise also does not rise to the level of an atypical and significant hardship because "the conditions [the prisoner] experienced did not greatly exceed what one would expect from prison life generally." *Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997) (citations omitted). Having said

that, conditions that amount "to a confinement that deprives a prisoner of all human contact or sensory stimuli" are conclusively an atypical and significant hardship. *Hardaway*, 734 F.3d at 744.

No reasonable factfinder could conclude that the three-officer escort restriction constituted an atypical and significant hardship. Though the restriction did limit Durley's movements even when he was not on disciplinary segregation, Waupun had a legitimate safety and security interest in placing the restriction. Durley presented no evidence that the restriction was placed or left in place for purely punitive or inappropriate purposes.

In terms of creating harsh conditions, the only evidence Durley offers is that he had to miss some medical appointments (he does not say how many). But Durley does not explain how he was impacted or injured by these missed appointments, such as evidence that his condition worsened or he was left in extreme pain. Durley additionally does not present evidence that he was treated worse than other prisoners in his situation. Given that the three-officer escort restriction is common enough that it is codified in Waupun's policies and procedures, it is reasonable to conclude that other prisoners at Waupun were also occasionally subjected to the same restriction. Furthermore, a prisoner who creates a security threat should expect an enhanced level of supervision.

Because as a matter of law Durley did not suffer an atypical and significant hardship, he did not have a liberty interest that was implicated by the three-officer escort restriction that was violated by Rymarkiewicz. Where there is no liberty

interest, a prison "is free to use any procedures it chooses or no procedures at all." *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001). Thus, Rymarkiewicz's failure to ensure a review of Durley's restriction every 30 days did not rise to the level of a constitutional violation.

Summary judgment is granted in favor of Rymarkiewicz.

## CONCLUSION

For the foregoing reasons, Rymarkiewicz's motion for summary judgment is granted, and Durley's motion for summary judgment is denied. Rymarkiewicz also argued that he was entitled to qualified immunity, but because the court found in his favor on the merits it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Rymarkiewicz's motion for summary judgment (ECF No. 50) is **GRANTED.**

**IT IS FURTHER ORDERED** that Durley's motion for summary judgment (ECF No. 58) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 19th day of August, 2024.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge